**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| ***IN RE: MCLEAN DATA BREACH LITIGATION.*** | Case No. 3:25-cv-00461-RCY<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS** |

Following over a year of litigation and hard-fought settlement negotiations, the Parties have reached a Settlement to resolve all claims arising from the Data Incident experienced by McLean Mortgage Corporation ("McLean" or Defendant") in October of 2024 (the "Data Incident"). The Settlement provides multiple forms of benefits for Settlement Class Members, including (1) reimbursement for up to $1,000 in ordinary Out-of-Pocket Losses; (2) up to $4,000 in reimbursement for Extraordinary Losses; (3) reimbursement for Lost Time (up to 4 hours at $25 per hour); (4) in lieu of the other forms of cash payments, $45 Alternative Cash Payments that require no proof of loss or documentation; (5) three years of Credit Monitoring and Identity Theft Protection Services; (6) notice and administration costs; (7) service award payments as approved by the Court; and (8) attorneys' fees and expenses as awarded by the Court. In addition, and separate from, the other Settlement Benefits, Defendant will confirm that it has taken steps to enhance its information security at its own cost.  This will ensure Plaintiffs' and the Settlement Class's information is protected in the future.

The Settlement is a strong result for the Settlement Class, securing valuable benefits while eliminating the risks of continued litigation. The Settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the Settlement, directing class notice, and scheduling a Final Approval

1

Hearing. In support of their motion, Plaintiffs submit the Settlement Agreement (attached as Exhibit 1 to the Joint Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl.")) filed herewith, with its attached sub exhibits: Exhibit A – Long Form Notice; Exhibit B – Email Notice; Exhibit C – Postcard Notice; Exhibit D – Claim Form, and; Exhibit E – Proposed Preliminary Approval Order.

## FACTUAL BACKGROUND

### A.      Overview of the Litigation

On or around October 17, 2024, McLean became aware that unauthorized cybercriminals gained access to its computer network and the highly sensitive personal information stored on that network ("Data Incident"). Following its internal investigation, McLean reported that the Data Incident potentially exposed the personal information of 30,453 individuals, including current and former McLean customers and/or employees. The internal investigation further revealed that the personally identifiable information ("PII" or "Private Information") that was potentially accessed, which varied by individual, included names, Social Security numbers, driver's license numbers, financial account numbers, passport numbers, and health insurance information belonging to Plaintiffs and the Class.

On or about June 11, 2025, Defendant began notifying Plaintiffs and Class Members about the Data Incident. Subsequently, Plaintiffs each decided to file their respective class actions following their receipt of notice letters from Defendant. All initial complaints were filed before the United States District Court for the Eastern District of Virginia. The cases were consolidated for all purposes on October 9, 2025. Plaintiffs subsequently filed a consolidated class action complaint (the "Complaint") before the United States District Court for the Eastern District of Virginia on November 24, 2025.

2

Defendant denied all allegations in Plaintiffs' Complaint. Recognizing the risks and continued costs of litigation, and in an effort to conserve resources for the benefit of those impacted in the Data Incident, the Parties began discussing settlement. In connection with their settlement discussions, the Parties exchanged informal discovery including information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted by the Data Incident, and the specific type of information potentially accessed.

Following months of extensive arm's length negotiations, the Parties were eventually able to arrive at the Settlement Agreement described herein.  The Parties later finalized the terms of the Settlement Agreement and the attached exhibits.

### B.    The Terms of the Proposed Settlement

The following are the material terms of the Settlement:

### 1.    The Settlement Class

The proposed Settlement Class is defined as follows:

> All living persons residing in the United States whose PII was potentially compromised in the Data Incident experienced by McLean on or around October 17, 2024, including all persons who were sent a notice letter regarding the Data Incident.

Settlement Agreement ("SA") ¶ 52. Excluded from the Class are: (1) any officer, director, or entity in which McLean has a controlling interest, (2) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of McLean, and (3) the judiciary to whom this case is assigned, their families and members of their staff. *Id*. ¶ 53. The proposed Class consists of approximately 30,453 individuals, each of whom was identified by Defendant as having their Private Information potentially affected by the Data Incident.

### 2.    The Settlement Benefits

This proposed Settlement provides a wide array of benefits designed to ameliorate the precise harms that Plaintiffs and Settlement Class Members allege that they suffered as a result of this Data Incident. The cash benefits offered under the terms of this Settlement are uncapped in the aggregate, meaning that all 30,453 Settlement Class Members may claim any of the cash benefits. In addition, all 30,453 Settlement Class Members may claim an enrollment code for three years of credit monitoring and identity theft protection. The benefits are described more fully below.

a.      **Cash Payments**: As part of the Settlement, McLean will agree to make available the following cash payments to Settlement Class Members who submit valid and timely claim forms.

i.      **Reimbursement of Out-of-Pocket Losses (SA ¶ 57(a)(1)(a)-(b))**

Settlement Class Members may elect to receive up to $1,000.00 for reimbursement of ordinary documented losses and expenses with third-party documentation if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was directly caused by the Data Incident; (iii) the loss was incurred after the date of the Data Incident; and (iv) the loss is not already covered by one or more of the other reimbursement categories. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product or through a financial institution's consumer fraud policies. Documentation must be from a third-party source. The categories of reimbursable ordinary expenses and losses include, but are not limited to, bank fees, postage, copying, travel costs, and notary fees related to addressing the misuse of the Class Members' Social Security number or date of birth; fees for credit repair services; and costs for additional credit reports,

credit monitoring, or other identity theft insurance products. If a Settlement Class Member does not submit third-party documentation supporting a loss, or if the Settlement Administrator rejects for any reason the Settlement Class Member's claim and the Settlement Class Member fails to cure the claim, the claim will be rejected.

Settlement Class Members may submit a claim for up to $4,000.00 for extraordinary losses directly caused by the Data Incident. To be valid, such loss must be (i) an actual, documented, and unreimbursed expense arising out of actual fraud and/or identity theft using the Class Members' Private Information, (ii) directly caused as a result of the Data Incident, (iii) incurred after the Data Incident, and (iv) supported by third-party documentation, such as a police report or submitted insurance claim. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product or through a financial institution's consumer fraud policies. Documentation must be from a third-party source. If a Settlement Class Member does not submit third-party documentation supporting a loss, or if the Settlement Administrator rejects for any reason the Settlement Class Member's claim and the Settlement Class Member fails to cure the claim, the claim will be rejected.

### ii.    Reimbursement for Lost Time (SA ¶ 57(a)(2))

Settlement Class Members may submit claims for up to 4 hours of lost time, reimbursable at $25.00 per hour, by submitting an attestation, made under penalty of perjury, that they spent the claimed time responding to issues raised by the Data Incident and reasonably describing how such time was spent. Claims for lost time are included within the $1,000.00 cap on ordinary documented losses and expenses.

### iii.    Alternative Cash Payment (SA ¶ 57(a)(3))

As an alternative to filing a claim for reimbursement of out-of-pocket losses and/or lost time, Settlement Class Members may submit a claim to the Settlement Administrator to receive an alternative cash payment of $45.00. Other than proof of Class membership, no documentation is required to make a claim for the alternative cash payment. The value of this benefit to the Settlement Class is $1,370,385.00 (i.e., $45.00 times 30,453 Settlement Class Members).

### b.    Credit Monitoring and Identity Theft Protection (SA ¶ 57(b))

In addition to a Cash Payment, McLean will pay for additional credit-monitoring services as follows: all Settlement Class Members may submit claims for a three-year membership of one-bureau credit monitoring with $1,000,000.00 in identity theft/fraud insurance. Once enrolled in the credit monitoring, claimants are entitled to remain enrolled for the applicable term at no cost to them.

### c.  Business Practice Improvements (SA ¶ 57(c))

McLean represents that, since the Data Incident, it has undertaken certain business practice enhancements intended to improve the security of its systems and protect against future breaches. McLean agrees that the Business Practice Improvements benefit the Settlement Class. All costs associated with implementing these improvements have been borne by McLean separately from the relief made available to the Class.

### 3.    Proposed Notice and Claims Program

The Parties jointly agreed upon and Defendant retained Simpluris, Inc. ("Simpluris") as Settlement Administrator to provide notice to class members and to process claims. SA ¶ 68(a). The appointment of Simpluris is subject to the approval of this Court. The notice program satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure. The notice program includes the dissemination of individual, direct notice by email or by postcard

mailed to each Settlement Class Member for whom Defendant can ascertain an email or mailing address from its records with reasonable effort. *Id.* ¶ 69(a)-(b). The Notice Program also includes the publication of a long form notice on a dedicated settlement website (the "Settlement Website"). *Id.* ¶ 48.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to file claims electronically on the Settlement Website or by mail; and the establishment and maintenance of a Toll-Free Help Line for Settlement Class Members to call with settlement-related inquiries. *Id.* ¶¶ 48, 69; Claim Form, Ex. D to Ex. 1.

### 4.    Opt-Outs and Objections

To opt-out of the Settlement's benefits, Settlement Class Members can submit a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline, the "Exclusion Deadline." *Id.* ¶ 72(a). The Request for Exclusion must include the person opting-out's name, address, telephone number, and email address (if any); the name and number of this case; a statement that he/she wishes to be excluded from the Settlement Class; and their wet signature. *Id*. ¶ 73(b).

To object, Settlement Class Members must file written objections with the Court, with copies sent to the Settlement Administrator, no later than 60 days after the Notice Deadline, the "Objection Deadline." *Id.* ¶ 74(a). A written objection must include (1) the objector's full name, address, current telephone number, and email address (if any); (2) the name and number of this case; (3) all grounds for the objection, with factual and legal support for the stated objection, including any supporting materials; (4) the identification of any other objections the objector has filed, or has had filed on his/her behalf, in any other class action cases in the last four years, including the caption of each case in which the objector has made such objections and a copy of

any orders related to or ruling upon the objector's prior objections that were issued by the trial and/or appellate courts in each such case; (5) whether the objector intends to appear at the Final Approval Hearing; and (6) the objector's wet signature. *Id.* ¶ 75(b). If represented by counsel, the objecting Settlement Class Member must also provide the name and telephone number of his/her counsel, the identification of any other objections his/her counsel and/or counsel's law firm has filed in any other class action cases in the last four years, including the caption of each case in which the objector's counsel or counsel's law firm has made such objections and a copy of any orders related to or ruling upon the objector's counsel's and/or counsel's law firm's prior objections that were issued by the trial and/or appellate courts in each such case. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he/she must state as such in the written objection, and must also identify any witnesses he/she may call to testify at the Final Approval Hearing and all exhibits he/she intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written objection. *Id.*

### 5.    Attorneys' Fees and Expenses and Service Awards

Class Counsel may separately move for a combined award of attorneys' fees and litigation expenses not to exceed $250,000.00, subject to Court approval. SA ¶ 83. Class Counsel may also request Service Awards of up to $2,500.00 each for the Class Representatives. *Id.* ¶ 85.

### 6.    Releases

The Settlement Class will release Defendant and all Related Entities only from claims arising from this Data Incident and that were or could have been asserted in this case. SA ¶ 60.

## ARGUMENT

### I.    ARTICLE III STANDING

As a preliminary consideration, the Court has an initial obligation to assure itself of the Plaintiffs' "standing under Article III," which "extends to court approval of proposed class action settlements." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (*per curiam*). "[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector,* 142 S. Ct. 765 (2022). The Court need not determine whether absent settlement class members have standing to have jurisdiction to approve a settlement. *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019); *see also Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (in a class action, "we analyze standing based on the allegations of personal injury made by the named plaintiffs.") (internal quotation marks omitted).

The Court should readily conclude that it has jurisdiction over the Settlement because the Settlement Class Representatives have established standing to sue. As to the injury-in-fact requirement, Plaintiffs have alleged both actual misuse and actual access to their personal data resulting from the Data Incident. In March and April of 2025, unknown individuals used Plaintiff Radhakrishnan's Private Information to engage him in a scam which resulted in him transferring thousands of dollars to the scammers, who then vanished. Compl. ¶ 180. On September 21, 2025, unknown individuals used Plaintiff Parks' Private Information to fraudulently open two Boost Mobile accounts in his name. Compl. ¶ 192. In the months since the Data Incident, Plaintiff Milberry received notifications advising her that her Private Information, including Social Security number, has been posted to the dark web. Compl. ¶ 205. All of these allegations of actual misuse resulting from the Data Incident are sufficient to establish standing under *Hutton.*

District Courts in the Fourth Circuit have already established that allegations of "(1) an imminent risk of injury of identity theft; (2) time and money expended to protect against identity theft; (3) loss of property value in their personal identifying information; and (4) loss of the benefit of their bargain […]" are sufficient to satisfy the remaining elements of standing. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 457 (D. Md. 2020). Here, Plaintiffs also alleged that all Plaintiffs face an imminent risk of injury from identity theft, spent time and money to protect against identity theft, suffered a loss of property value in their personal identifying information, and lost the benefit of their bargain. Compl. ¶¶ 138-170, 248.

Further, Settlement Class Representatives have properly pleaded that Defendant breached an implied contract with Settlement Class Representatives and Settlement Class Members to provide reasonable data security. *Id.* ¶¶ 254-262. This alone is sufficient to provide standing for the Settlement Class Representatives and thus to invoke the Court's subject matter jurisdiction to approve the Settlement. *See L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x 284, 289 (4th Cir. 2016) ("[B]y alleg[ing] the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] complaint adequately show[ed] an injury to her rights for purposes of standing.") (citation and quotations omitted); *see also id.* ("[W]hether a plaintiff ultimately recovers the damages he seeks is a question better left to the applicable substantive law rather than a standing inquiry under Article III.") (citation and quotations omitted).

## II. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

When binding absent class members—as contemplated by the Settlement here—the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able

10

to (i) approve the proposal under Rule 23(e)(2)" by finding that the Settlement is "fair, reasonable, and adequate"; and (ii) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)-(2). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, and prior to the 2018 amendment of the Federal Rules, the Court's Rule 23(e) obligations were addressed with a "two-level analysis" that largely overlaps with Rule 23. *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *Jiffy Lube*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991). To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated

duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*.

Evaluation under both these factors and those enumerated in Rule 23 confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should issue notice of the Settlement to the Settlement Class.

### A.    The Class Was Adequately Represented.

"The adequacy requirement is met when the named representative possesses the same interests and suffers the same injury as the proposed class members." *Adair v. EQT Prod. Co.*, No. 1:10-cv-00037, 2013 U.S. Dist. LEXIS 142005, at *125 (W.D. Va. June 5, 2013) (citation omitted). Adequacy also contemplates "the conflicts and competency of class counsel." *Harris v. Rainey*, 299 F.R.D. 486, 491 (W.D. Va. 2014). Here, the Settlement Class Representatives have the same interests as other Class Members as they are asserting the same claims and share the same injuries. The Settlement Class Representatives actively participated in the Action including, at all times, regularly maintaining contact with counsel, assisting in the investigation of the case, reviewing their respective Complaint(s), producing information and documentation to Class Counsel, remaining available for consultation throughout the settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. Joint Decl. ¶ 17.

Further, the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Joint Decl. ¶¶ 6-11; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B.      The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the Consolidated Complaint; the Parties' vigorous pursuit of facts (including independent investigation and the exchange of informal discovery); and the length and difficulty of the negotiations. Joint Decl. ¶¶ 7-11; *see also Domonoske v. Bank of Am., N.A.*, Civil Action No. 5:08cv066, 2010 U.S. Dist. LEXIS 7242, at \*51 (W.D. Va. Jan. 27, 2010) (adversarial encounters support a finding of arms' length negotiations).

### C.      The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to claim: (1) reimbursement for up to $1,000.00 in ordinary Out-of-Pocket Losses; (2) up to $4,000.00 in reimbursement for Extraordinary Losses; (3) reimbursement for Lost Time (up to 4 hours at $25.00 per hour), and; (4) in lieu of the other forms of cash payments, $45.00 Alternative Cash Payments that require no proof of loss or documentation. All Settlement Class Members will also be able to claim three years of Credit Monitoring and Identity Theft Protection Services. Moreover, the overall value of the Settlement is well within the range of data breach class action settlements approved across the country. *See* Joint Decl. ¶ 15.

Class Counsel, a group with extraordinary experience in leading data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Joint Decl. ¶¶ 3-4, 12, 14. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### 1.    The costs, risk, and delay of trial and appeal.

Plaintiffs faced significant risks and costs should they continue to litigate the case. Plaintiffs would have faced significant risks, costs, and delays from discovery, class certification, a likely motion for summary judgment, trial, and likely interlocutory and post-judgment appeals.

In contrast to the risks, costs, and delay posed by the pending motions and possible appeals and trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members with valid claims for Out-of-Pocket Losses and Lost time will receive guaranteed compensation, provides the ability to claim a $45.00 cash payment with no documentation or proof of loss, and provides Settlement Class Members with access to credit monitoring services, benefits that may not have been available at trial.

The substantial costs, risk, and delay of further litigation support a finding that the proposed Settlement is adequate.

### 2.    The method of distributing relief is effective.

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled.

As an initial matter, the Notice Program advising the Settlement Class of the available relief will be efficient and effective. The Notice Program includes the dissemination of individual notice by email or postcard (via direct mail) and the publication of a long form notice on the Settlement Website. SA ¶¶ 70(a), 48; Exhibits A, B, and C to SA.

Therefore, Settlement Class Members will receive effective and efficient notice of the relief, including: (1) reimbursement for up to $1000.00 in ordinary Out-of-Pocket Losses; (2) up to $4000.00 in reimbursement for Extraordinary Losses; (3) reimbursement for Lost Time (up to 4 hours at $25.00 per hour), and; (4) in lieu of the other forms of cash payments, $45.00 Alternative Cash Payments that require no proof of loss or documentation. SA ¶ 57(a). All Settlement Class Members will be able to claim three years of Credit Monitoring and Identity Theft Protection Services. *Id.* ¶ 57(b).  Settlement Class Members who submit a Claim Form can then receive payment of their claim for cash benefits via check by mail, or via PayPal, Venmo, or such other electronic payment platform deemed efficient and appropriate by the Claims Administrator. *Id.* ¶ 59(m).

Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing relief is both efficient and effective and the proposed Settlement is adequate under this factor.

### 3.    The terms relating to attorneys' fees are reasonable.

Class Counsel will request a combined attorneys' fee and litigation expense award of up to $250,000.00, which will be expressed as a percentage of the value conferred by the Settlement on the Settlement Class. Where, as here, a class settlement creates a common benefit, the majority of courts consistently apply a percentage of the benefit approach because it "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *See, e.g.*, *Domonoske*, 790 F. Supp. 2d 466, 475 (quoting *The Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 471 (S.D. W. Va. 2010)). The Settlement Agreement provides that Settlement Class Counsel may request fees and expenses not to exceed $250,000.00, but the ultimate fee award will be determined by the Court's discretion, based on an application in accordance with

Fourth Circuit law which provides an opportunity for comment from Settlement Class Members. SA ¶ 83.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. *Id.* ¶ 84. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses.[1] The proposed Settlement is adequate under this factor.

### 4. Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there is no such agreement. As such, this factor weighs in favor of finding that the Proposed Settlement is adequate.

### D. The Proposed Settlement Treats Class Members Equitably.

Finally, the proposed Settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). This Settlement is uncapped in the aggregate, meaning all Settlement Class Members may claim any or all of the benefits offered, and reap the full measure of those benefits (with no *pro rata* reductions). All Settlement Class Members will have the same opportunity to file a claim for Out-of-Pocket Losses (both ordinary and extraordinary) and Lost Time spent dealing with the effects of the Data Incident. This means that monetary

---

[1] Similarly, Class Counsel will request service awards of $2,500.00 for each of the Settlement Class Representatives. Service awards of this size are reasonable. *See Compton v. N. Cent. Va. Rests., Inc.*, Civil Action No. 5:20-cv-00073, 2022 U.S. Dist. LEXIS 159070, at *16 (W.D. Va. Sep. 2, 2022) (granting service award of $5,000); *Hale v. CNX Gas Co., LLC*, No. 1:10-cv-00059, 2018 U.S. Dist. LEXIS 230770, at *5 (W.D. Va. Aug. 23, 2018) (same).

16

compensation will be apportioned in accordance with each claimant's injury. Additionally, all Settlement Class Members may claim a $45.00 Alternative Cash Payment, with no Settlement Class Member obtaining any greater relative benefit over another. *Id.* Also, all Settlement Class Members will be able to claim three years of credit monitoring and identity theft protection. This factor likewise supports a finding that the Court will be able to approve the proposed Settlement, and that class notice is appropriate.

### E. Factors Traditionally Evaluated by Fourth Circuit Courts Weigh in Favor of Preliminary Approval.

### 1. The Settlement Meets Traditional Criteria for Fairness.

Factors set forth by the Fourth Circuit in *Jiffy Lube* pertaining to the fairness of a given settlement support preliminary approval here. *See In re Jiffy Lube Securities Litigation*, 927 F.2d at 158-59.

*First,* the posture of the case supports approval of Settlement. Though early in litigation, Plaintiffs have conducted an extensive investigation of the claims and significant informal discovery was exchanged both prior to and during settlement negotiations that allowed the Parties to fully evaluate the claims, defenses, and litigation risks at issue. Joint Decl. ¶¶ 6, 9.

*Second,* the extent of informal discovery conducted supports approval. Such informal discovery includes a voluntary exchange of information including detailed information regarding the number of individuals affected by state and in total; the types of Private Information and any data potentially or actually compromised in the Data Incident; the total number of individuals provided notice of the Data Incident; and the number of individuals that took advantage of any offer made by Defendant for complimentary identity monitoring services. *Id.* Extensive formal discovery is not a necessary prerequisite for approval. *See Domonoske* 790 F. Supp. 2d 466, 473 (finding "burdensome, expensive discovery that seems to plague so many class actions"

17

unnecessary to support approval where case is straight forward and the record was adequately developed).

*Third,* the arm's length and adversarial nature of negotiations, conducted between competent and highly experienced counsel for all Parties, supports approval of Settlement.

*And finally,* the extensive experience of counsel supports a finding of fairness. Counsel here has deep experience in both class actions generally and data breach class actions in particular and support the Settlement as fair, reasonable, and adequate. Joint Decl. ¶¶ 3-4, 21, Exs. 1 and 2; *see Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. June 8, 1995) (opining class counsels' "wealth of experience and knowledge" supported a finding of fairness).

### 2.      The Settlement Meets Traditional Criteria for Adequacy.

An analysis of factors pertaining to the adequacy of a settlement also supports preliminary approval here. *See In re Jiffy Lube Securities Litigation*, 927 F.2d at 158-59.

The first, second, and third factors traditionally considered by Fourth Circuit courts pertaining to adequacy—the relative strength of plaintiff's case on the merits, the existence of difficulties presented by proof and/or defenses, and the anticipated duration and expense of additional litigation—all support a finding of adequacy. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *4-5 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). While Plaintiffs here have successfully avoided dismissal thus far, class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases.

18

*See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, while early settlement has allowed costs to stay modest, and the Settlement Agreement provides for such costs to be paid for separate and apart from the funds available to the Class—protracted litigation would only serve to increase costs and have a potentially negative effect on Class recovery, which is itself far from certain. Continued litigation would also increase the burden on the court, without any guaranteed benefit to Plaintiffs or Settlement Class Members. "Complex litigation ... 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. Nor-Am Chem. Co.*, CIVIL NO. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372, at *61-62 (S.D. Ala. May 23, 1996), *quoting In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and] reduce litigation costs" this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

The *fourth* factor traditionally considered by Fourth Circuit Courts—the solvency of the Defendant and the likelihood of recovery on a litigated judgment—has not been placed at issue here and thus neither weighs for or against approval of settlement.

*And finally,* there has been no opposition to the Settlement. While this factor will be re-examined at final approval, after notice has issued to the Class and Settlement Class Members have had an opportunity to respond, it currently weighs in favor of a finding of adequacy.

### III.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION.

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Such a decision should not be difficult here. Settlement classes are routinely

certified in similar consumer data breach cases. *See, e.g.*, *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050-LMB-MSN, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. JKB-16-3025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector,* 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### A.     The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed Settlement Class consists of approximately 30,453 putative Class Members, indisputably rendering individual joinder impracticable. *See Talbott v. GC Servs., Ltd. Pshp.*, 191 F.R.D. 99, 102 (W.D. Va. 2000) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359 (internal quotations omitted). All Settlement Class Members suffered the same injury—theft of their personal data in the Data Incident—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Abubaker v. Dominion Dental United States*, Civil Action No. 1:19-cv-01050-LMB-MSN,

20

2021 U.S. Dist. LEXIS 252202, at *7-8 (E.D. Va. Nov. 19, 2021); *Equifax*, U.S. Dist. LEXIS 118209, at *179-180; *Anthem*, 327 F.R.D. at 309.

*Typicality:* Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class…." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (citation and quotations omitted). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data breach cases. The Settlement Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Incident and involve the same overarching legal theories, including the theories that Defendant breached their common law, statutory and contractual duties to protect Settlement Class Representatives' and Class Members' personal information. *See, e.g. Dominion* 2021 U.S. Dist. LEXIS 252202, at *8-9.

*Adequacy of Representation:* "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.* 521 U.S. at 625 (1997). Settlement Class Representatives do not have any interests antagonistic to other Class Members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Joint Decl. ¶ 3.

### B.    The Rule 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is

"superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Amchem* 521 U.S. at 620.**Predominance:** Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Id.* at 624. Where the "overarching issue" in the Action is common, a class may be certified notwithstanding the need to resolve individualized issues. *Adair v. EQT Prod. Co.*, 320 F.R.D. 379, 426 (W.D. Va. 2017). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *See, e.g.*, *Dominion* 2021 U.S. Dist. LEXIS 252202, at *10; *Equifax*, U.S. Dist. LEXIS 118209, at *183-185; *Anthem,* 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

**Superiority:** "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy…." 7AA Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 30,453 persons through individual litigation would obviously be

inefficient. The superiority requirement thus is satisfied. *See Equifax*, U.S. Dist. LEXIS 118209, at *185-187; *Anthem,* 327 F.R.D. at 315-16.

### IV.    THE COURT SHOULD APPROVE THE NOTICE PLAN, NOTICES, AND CLAIM FORM, AND APPOINT THE SETTLEMENT ADMINISTRATOR.

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Simpluris as the Settlement Administrator and approve the notice plan outlined in the Settlement Agreement. *Supra* Factual Background § C.3. The notice plan is uncomplicated and, when implemented, will provide the best notice practicable under the circumstances. *See also* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class).

The Court should also approve the proposed forms of notice attached as Exhibits A, B and C to SA ("Notices"), which satisfy all of the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information

to evaluate whether to participate in the Settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the Settlement, and how to object to the Settlement, including the requested attorney fees and costs. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached as Exhibit D to SA. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

## V.      THE COURT SHOULD APPOINT SETTLEMENT CLASS COUNSEL.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Throughout this case, Class Counsel A. Brooke Murphy and David Lietz have demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the Settlement now before the Court. Joint Decl. ¶¶ 6-11, 20. The Court should thus appoint them as Class Counsel under Rule 23(g).

## TIMELINE OF SETTLEMENT EVENTS

For convenience, proposed dates and deadlines leading to a Final Approval Hearing are provided below and in the proposed order separately submitted to the Court.

| Event | Timing |
|---|---|
| Deadline for Defendant to provide Settlement Class List to Settlement Administrator pursuant to the Settlement Agreement | 10 days after entry of this Order |
| Notice Program Commencement ("Notice Date") | 30 days after entry of this Order |
| Deadline for Class Counsel to file motion for attorneys' fees, costs, expenses and service awards | 14 days before Objection/Exclusion Deadline |
| Objection Deadline | 60 days after the Notice Date |
| Exclusion Deadline | 60 days after the Notice Date |
| Claims Deadline | 90 days after the Notice Date |
| Deadline for Plaintiffs to file motion for final approval of settlement and responses to any timely submitted Class Member objections, which shall include a declaration from the Claims Administrator confirming execution of and compliance with its obligations in the Settlement Agreement as of the date of the declaration and identifying all Settlement Class Members who submitted timely requests for exclusion | 14 days prior to Final Approval hearing |
| Final Approval Hearing | _____, 2026 at __: __ _.m. in Courtroom ____<br>[No earlier than 125 days after entry of the Preliminary Approval Order] |

## CONCLUSION

For the reasons set forth above, Plaintiffs request the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed Settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Dated: July 9, 2026

Respectfully Submitted,

/s/ Lee A. Floyd
Lee A. Floyd (VSB #88459)
**FLOYD LAW, PC**

25

626 East Broad Street, Suite 300
Richmond, Virginia 23219
Telephone (804) 529-0000
*lee@floydpc.com*

David K. Lietz (admitted *pro hac vice*)
**MILBERG PLLC**
5335 Wisconsin Ave., NW, Suite 440
Washington, DC 20015
Phone: 866.252.0878
dlietz@milberg.com

A. Brooke Murphy (admitted *pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

*Interim Class Counsel*

William B. Federman (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
-and
4131 North Central Expressway, Suite 900
Dallas, Texas 75204
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Counsel for Plaintiffs and the Putative Class*

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Lee A. Floyd*