**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **IN RE: MCLEAN DATA BREACH LITIGATION** | Case No. 3:25-cv-00461-RCY<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS** |

Pursuant to Rules 23(e) and 23(h) of the Federal Rules of Civil Procedure, the Settlement Agreement, and this Court's Preliminary Approval Order (ECF No. 39), Plaintiffs Jayaprakash Radhakrishnan, Micah Parks, and Priscilla Millberry hereby file this Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards (the "Motion").

Class Counsel David K. Lietz of Milberg, PLLC and A. Brooke Murphy of Murphy Law Firm worked diligently on behalf of Plaintiffs and the approximately 30,453 Settlement Class Members in this data breach case against Defendant McLean Mortgage Corporation. Plaintiffs seek a combined attorneys' fee and litigation expense award of $250,000.00 (inclusive of Class Counsel's reasonable litigation expenses in the amount of $1,929.13), and a service award of $2,500.00 for each Class Representative.[1] Class Counsel's lodestar confirms the reasonableness and appropriateness of this request: Class Counsel incurred a current combined lodestar of $208,504.90 to date. Moreover, any awarded fees, expenses, or service awards will be paid by Defendant outside of and separate from the Settlement Payments to the Settlement Class Members.

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release ("SA") (ECF No. 36-1) unless otherwise stated.

Thus, Plaintiffs' requested fees, expenses, and service awards will not impact the benefits available to the Settlement Class Members under the terms of the Settlement.

As discussed below, the requested fees, expenses, and service awards are reasonable and well within the range of approved awards in this Circuit. Thus, this Court should grant the motion.

## I. BACKGROUND

Defendant is a Virginia-based financial institution which provides mortgages and other financing solutions to consumers. (ECF No. 25, ¶ 2). Plaintiffs and Class Members are current and former customers of Defendant who provided Defendant with their Private Information to receive services. *Id*. ¶ 21. On October 17, 2024, Defendant discovered it had been subjected to a cyberattack and subsequently determined that an unauthorized criminal third party had accessed Defendant's systems and exfiltrated certain customer data. *Id*. ¶ 33. Defendant subsequently provided notice to the individuals affected by the Data Incident. *Id.*

Upon receiving notice that their Private Information had been impacted by the Data Incident, Plaintiffs retained Class Counsel and filed separate but related suits against Defendant for claims arising out of the Data Incident. Class Counsel thoroughly investigated the claims and facts of this case to determine the proper jurisdiction for this matter and were ultimately successful in consolidating their separate actions into this Action. On November 24, 2025, Plaintiffs filed a consolidated class action complaint against Defendant in this Court, bringing claims for negligence, breach of implied contract, unjust enrichment, and declaratory and injunctive relief. (ECF No. 25).

While the Parties were engaged in litigation, considering the risk, expense, and delay of continued litigation, the Parties also engaged in negotiations aimed at resolving the Action on a class-wide basis. SA ¶ 6. To aid in these discussions, Plaintiffs requested and Defendant produced informal discovery regarding the nature and cause of the Data Incident, the impacted individuals,

and damage-related issues. *Id*. ¶ 7. The Parties' negotiations were ultimately successful and resulted in their agreement as to all material terms of this Settlement. *Id*. ¶ 8. *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶¶ 7–14, attached hereto as **Exhibit 1**.

Thereafter, the Parties continued to negotiate the finer terms of the settlement, draft notice documents, and prepare the settlement for preliminary approval before the Court. *Id*. ¶ 12. On July 9, 2026, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law. (ECF Nos. 34–35). On August 12, 2026, the Court preliminarily approved the Settlement. (ECF No. 39). In accordance with that Order, Plaintiffs now present this motion for attorneys' fees and costs, and Service Awards to Plaintiffs.

The Settlement negotiated on behalf of the Class establishes a fair and reasonable settlement. In accordance with the terms of the Settlement, Settlement Class Members may elect to receive: (1) up to $1,000.00 for reimbursement of ordinary documented losses and expenses; (2) up to $4,000.00 for extraordinary losses directly caused by the Data Incident; and (3) payment for time spent responding to issues raised by the Data Incident up to 4 hours at $25.00 per hour. SA ¶¶ 57(a)(1)–(2). In lieu of submitting a claim for out-of-pocket losses and lost time, Settlement Class Members may elect to receive an alternative cash payment of $45.00. *Id.* ¶ 57(a)(3). Other than proof of Class membership, no documentation is required to make a claim for the alternative cash payment. *Id.* Lastly, regardless of whether they submit a claim for out-of-pocket losses, lost time, an alternative cash payment, or none at all, all Settlement Class Members may elect to receive 3 years of credit monitoring services (including $1,000,000.00 in identity theft/fraud insurance). *Id.* ¶ 57(b). The Settlement Class is defined as "[a]ll living persons residing in the United States whose PII was potentially compromised in the Data Incident experienced by McLean on or around

October 17, 2024, including all persons who were sent a notice letter regarding the Data Incident." *Id.* ¶ 52.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has observed, attorneys in a successful class action lawsuit may petition the Court for compensation relating to any benefits to the Class that result from the attorneys' efforts. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Rule 23(h) of the Federal Rules of Civil Procedure also expressly authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

## III. ARGUMENT

### A. The Fee Request is Reasonable and Should Be Approved

The Fourth Circuit has not identified specific factors for consideration in determining an appropriate attorneys' fees award in a common benefit case. However, there are two sets of factors currently deployed in this Circuit as a guide to courts when assessing a fee motion: those outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974) (as adopted in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978)) and *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009). Both focus on the reasonableness of the fees and many of the factors overlap. Virginia federal courts have used the *In re The Mills* factors recently in the data breach context. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, No. 119MD2915AJTJFA, 2022 WL 17176495, at *2 (E.D. Va. Nov. 17, 2022). The *In re The Mills* factors are: "(1) the results obtained for the [c]lass; (2) objections by members of the [c]lass to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the

attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases." *In re The Mills*, 265 F.R.D. at 261. Each of these factors supports the request made here.

**1. The Value of the Benefit Rendered to the Class Supports the Requested Fees**

The most critical factor in determining the reasonableness of an attorney fee award is "the degree of success obtained." *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983)).

There is no question that the Settlement obtained by Class Counsel rendered a substantial benefit to the Settlement Class. The cash benefits offered under the terms of this Settlement are uncapped in the aggregate, meaning that all 30,453 Settlement Class Members will receive the full value of the cash benefits they may claim under the Settlement. If all Settlement Class Members simply chose the $45 Alternative Cash Payment, the value of this Settlement would exceed $1.37 million. ECF No. 36, ¶ 22. In addition, all 30,453 Settlement Class Members may claim an enrollment code for three years of credit monitoring and identity theft protection. This is a tremendous benefit to the Settlement Class. The CyEx Financial Shield credit monitoring service being provided under the Settlement is $12.95 per month at retail, meaning that the retail value of this benefit is $466.20 per Settlement Class Member.[2] Since the monitoring is being offered to all 30,453 Settlement Class Members this Settlement Benefit has a retail value of over $14.196 million. *See* Joint Decl. ¶ 20.

In addition to these valuable benefits, Settlement Class Members may elect to receive up to $1,000.00 for reimbursement of ordinary documented losses and expenses with third-party documentation if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the

[2] *See* https://cyex.com/financial-shield.

loss was directly caused by the Data Incident; (iii) the loss was incurred after the date of the Data Incident; and (iv) the loss is not already covered by one or more of the other reimbursement categories. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product or through a financial institution's consumer fraud policies. SA ¶ 57(a)(1)(a)-(b). Settlement Class Members may also submit a claim for up to $4,000.00 for extraordinary losses directly caused by the Data Incident. *Id*. Under the $1,000.00 cap on ordinary documented losses and expenses, Settlement Class Members may submit claims for up to 4 hours of lost time, reimbursable at $25.00 per hour, by submitting an attestation, made under penalty of perjury, that they spent the claimed time responding to issues raised by the Data Incident and reasonably describing how such time was spent. SA ¶ 57(a)(2).

In addition to the foregoing settlement benefits, McLean has implemented additional security controls to enhance its network security. McLean represents that, since the Data Incident, it has undertaken certain business practice enhancements intended to improve the security of its systems and protect against future breaches. SA ¶ 57(c). McLean agrees that the Business Practice Improvements benefit the Settlement Class. All costs associated with implementing these improvements have been borne by McLean separately from the relief made available to the Class.

In this case, the benefits provided by the Settlement are an excellent result for the Class, both quantitatively and especially so when considering the risk of obtaining a smaller recovery (or no recovery) had this action proceeded through the pleadings stage, class certification, summary judgment, and trial. Rulings on dispositive motions and class certification (and any appeals) would have taken months if not years, delaying relief to the Class. Joint Decl. ¶¶ 27–28. Furthermore, a

jury trial would be lengthy and complex given the factual and legal issues involved. *See id.*; *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737 at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Assuming Plaintiffs prevailed at trial, given the likelihood of post-trial motions and appeals to follow, it would likely still be several more years before Class members would receive any compensation. *See id.* Alternatively, the Settlement efficiently provides prompt and substantial relief to the Class. *Id.* ¶ 21. Thus, the Settlement provides an outstanding value to the Class that will provide a guaranteed recovery, while avoiding the many complexities and risks of further litigation.

**2. The Class is Responding Favorably to the Settlement so Far**

As of the date of filing this motion, no class member has objected or opted out. Joint Decl. ¶ 18. The objection and opt out deadlines are both November 10, 2026. Class Counsel will update the number of exclusions, including whether objections are filed, in the forthcoming Motion for Final Approval of Class Action Settlement, and in the supporting declaration from the Settlement Administrator that will accompany that final approval motion.

**3. The Skill Required to Perform the Services Rendered Supports the Fee Request**

The skill and standing of counsel for all Parties was of the highest caliber. Class Counsel have national reputations and extensive experience in litigating data breach and other complex class actions. *See* ECF Nos. 9-1–9-3. Class Counsel prosecuted the case vigorously, provided high-quality legal services, and achieved an excellent result for the Class. Moreover, the effort and skill of Class Counsel involved vetting various plaintiffs through an extensive interview process, drafting an extensive Complaint, and presenting a strong case throughout Class Counsel's settlement discussions, which were essential to achieving a meaningful resolution.

Defendant was also represented by very skilled attorneys from a data breach defense firm which defends such actions nationwide and has a reputation for vigorous advocacy in the defense of complex data breach actions such as this. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-md-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of Class Counsels' work."). In the face of this formidable opposition, Class Counsel were able to advocate on behalf of the Class and settle the case on terms that were highly favorable to the Class. Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

**4. Complexity and Duration of the Litigation Favor the Fee Request**

Data breach class action lawsuits involve complex issues of the novel and evolving area of data breach litigation. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec 16, 2019) ("Data breach cases … are particularly risky, expensive, and complex."), *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are uncertain and class certification is rare."). Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307, at *1-2 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the motion to dismiss and summary judgment stage).

Here, this matter involved multiple layers of factual complexity, much of which was obscured at the outset due to the labyrinthine nature of the cybersecurity issues behind the Data

Incident. This required extensive preliminary investigation into Defendant's privacy policies, its methods of data collection and storage, and the nature of its cybersecurity protocols.

This case also involved complex legal issues. If settlement was not reached, Defendant may have successfully dismissed claims through a motion to dismiss, opposed class certification or otherwise obtained relief via Rule 23(f), or obtained summary judgment, trial, and/or post-judgment relief. Joint Decl. ¶¶ 27–28. The sophisticated factual and legal questions here and the inherent uncertainty of data breach class action litigation combine to enhance the complexity of this case and support the reasonableness of the requested fees.

The result achieved here is particularly noteworthy considering that data breach cases such as this one are relatively novel without much guiding legal precedent. Class Counsel's skill in efficiently negotiating a favorable Settlement despite such serious legal risk and the risk of no recovery at all justifies the requested fee. *See In re The Mills.*, 265 F.R.D. at 262-63 (finding that Counsel's ability to resolve the case within one year of the Court's denial of Defendant's Motion to Dismiss to be indicative of Counsel's "skill and efficiency."). Accordingly, this factor further supports Class Counsel's request for attorneys' fees.

**5. There was Substantial Risk of Non-Payment**

Class Counsel pursued this action purely on a contingent basis. Joint Decl. ¶ 23. Class Counsel conducted an extensive pre-filing investigation into the relevant facts and legal issues, which was informed by the vast experience and expertise accumulated during the prosecution of numerous other data breach cases. *Id.* ¶ 3. Class Counsel invested significant time, effort, and resources to the litigation without compensation. *Id.* ¶¶ 33, 39. Cognizant of the risk of nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation of Defendant's practices, fully vetted all potential plaintiffs, researched the facts and issues surrounding their cases, filed their cases, worked together to consolidate the related cases and create a leadership

structure, engaged in lengthy and arduous settlement negotiations, and exchanged informal discovery. *Id.* ¶ 22.

Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. And given the defenses mounted by Defendant—led by highly qualified and competent defense counsel, who regularly defend complex class action data breach cases—success on the legal issues was far from certain. *Id.* ¶¶ 27–28. Defendant could also oppose class certification pursuant to Rule 23 (including appeal under subsection (f)), obtain summary judgment, trial, and/or post-judgment relief. *See id.* While Class Counsel believed they would overcome Defendant's motion to dismiss, in order to obtain class-wide relief, Class Counsel would still need to move and succeed on a motion for class certification under Rule 23.

Moreover, despite the serious risk of non-recovery to the Class, at the outset and for the duration of these adversarial proceedings, Class Counsel nevertheless expended a significant amount of attorney time and expenses investigating, prosecuting, and resolving the alleged claims without guarantee of reimbursement. Joint Decl. ¶¶ 22, 24. As a result of the work Class Counsel devoted to this litigation, their law firms were forced to forgo representing clients in other matters that they otherwise would have taken on. *Id.* ¶¶ 24–25. Hence, Class Counsel should be rewarded for accepting Plaintiffs' case and devoting substantial resources investigating and prosecuting it on behalf of the Class despite the foregoing peril. Simply put, this litigation presented a substantial risk of non-recovery to the Class and thus non-payment to Class Counsel. The requested Fee Award appropriately and reasonably compensates Class Counsel for embarking on lengthy, time-consuming, and expensive litigation for the benefit of the Class, regardless of the previously mentioned risks.

**6. Public Policy Supports the Fee Request**

"Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Adequate compensation is a necessary component of encouraging attorneys to undertake such risk. *See Eltman v. Grandma Lee's, Inc.*, No. 82-cv-1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). Complex data breach class actions such as this are resource intensive and require a significant commitment of time and expense to pursue. This is especially true where, as here, the claims at issue would require extensive expert testimony and the individual damages suffered by some individuals may be significantly less than the cost of prosecuting the action. Public policy thus strongly supports the requested fee. Without the prospect of eventual compensation for Class Counsel here, these cases might never have been brought. Approving Class Counsel's fee request will help ensure that plaintiffs' attorneys continue to take up important cases, like this one, in the future.

**7. Awards in Similar Cases**

Previous fee awards in recent data breach class actions in the Eastern District of Virginia are commensurate with or substantially greater than the fee award sought here. For example, in *Pagan et al. v. Faneuil, Inc.*, Civil Action No. 3:22-cv-297, ECF No. 53 (February 17, 2023), Judge Payne awarded combined attorneys' fees and expenses of $225,000 in a data breach class action with similar (and slightly inferior) class relief. In *May et al. v. Five Guys Enterprises, LLC*, Civil Action No. 1:23-cv-00029, ECF No. 31 (July 12, 2024), Judge Hilton awarded $235,463.97 in combined attorneys' fees and costs in another data breach class action. In *In re R&B Corporation of Virginia d/b/a Credit Control Corporation Data Security Breach Litigation*, Civil

Action No. 4:23-cv-00066-JKW-RJK, ECF No. 69 (January 29, 2025), Judge Walker awarded $537,766.82 in attorneys' fees and reimbursement of reasonably incurred expenses of $13,633.82 in yet another data breach class action settlement. In *Tiller et al. v. The Hilb Group Operating Company, LLC*, Civil Action No. 3:23-cv-00759 (JAG), ECF No. 48 (February 3, 2025), Judge Gibney awarded $533,333.33 in attorneys' fees and $16,793.84 as an award of costs and expenses for a data breach class action settlement. Class Counsel in this case was involved in each one of these cases, and represents to the Court that (with some deviation) the effort put forth on behalf of the Settlement Class in this case mirrors that in these other cases. The fee awards in similar cases thus fully support the requested fees and expenses sought here.

**8. The Value of Class Counsel's Services on an Hourly Basis Supports the Fee Request**

As detailed herein and in the Joint Declaration of Class Counsel in support of this motion, Class Counsel exerted substantial efforts in advancing this litigation in the face of aggressive and highly-skilled defense attorneys. In total, Class Counsel spent 270.3 hours of attorney and other professional support time prosecuting the Action for the benefit of the Class, not including time spent preparing the instant briefing. Joint Decl. ¶¶ 33–34. Based on these hours, Class Counsel's lodestar is $208,504.90. *Id*. Subtracting out the expenses, the requested fee award represents a modest multiplier of 1.19. Further, Class Counsel anticipate spending additional time and expense through the pendency of this litigation, including but not limited to, time spent researching and drafting the final approval brief, responding to any potential objectors, traveling to and from the final approval hearing, and working closely with the Settlement Administrator to track the filing of claims and oversee distribution should this Settlement receive final approval.

A comparison of recent cases in the Eastern District of Virginia shows that courts have awarded fees that included "multipliers" of at or greater than two. *See*, *e.g.*, *In re Microstrategy,*

*Inc.*, 172 F.Supp.2d at 790 (approving a multiplier of 2.6); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11–CV–754, 2014 WL 4403524, at *15 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (approving a multiplier of 1.99).

Here, Class Counsel's requested fee represents a multiplier of 1.19. This multiplier is comfortably below the range of multipliers other courts have found to be reasonable. *See Domonoske v. Bank of America, N.A.*, 790 F.Supp.2d 466, 476 (W.D. Va. 2011) (surveying cases to conclude that a 1.8 multiplier is "well within the normal range of lodestar multipliers").

Fee awards in class actions with substantial contingency risks often range from one to four times the lodestar or even higher. *See, e.g.*, *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approving multiplier of approximately 5.9, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, No. 06-cv-468, 2008 WL 553764, at *2-3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (explicitly noted that courts in analogous matters had applied multipliers between 2 and 4 to the lodestar); *In re Cardizem CD Antitrust Litig.*, No. 2:99-md-1278, (Nov. 25, 2002) (awarding fees amounting to 3.7 multiplier); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (awarding fees amounting to 2.49 multiplier).

Here, despite the numerous substantial litigation risks in the case from the outset, Class Counsel are seeking a fee that represents a very modest multiplier of 1.19 on the lodestar value of their current time and anticipate spending additional time and expense throughout the final approval process and distribution of Settlement Class Benefits. The prior experience of Class

Counsel informs them that the additional time necessary will likely result in a total lodestar that is equal to or only slightly greater than the fee requested, and that the lodestar multiplier will disappear by the time the case is concluded. Joint Decl. ¶ 36. This further supports the reasonableness of the fees requested.

### B. The Litigation Expenses Are Reasonable

Federal Rule of Civil Procedure 23(h) allows a court approving a class settlement to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Accordingly, courts in the Fourth Circuit allow plaintiffs to recover "reasonable litigation-related expenses as part of their overall award." *Decohen*, 299 F.R.D. at 483 (citation omitted). Recoverable costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel are integrally related to the work of the attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ." *Daly v. Hill*, 790 F.2d 1071, 1083 (4th Cir. 1986).

Class Counsel has incurred $1,929.13 in reasonable expenses litigating this case. Joint Decl. ¶ 39. These costs are attributed to the filing fee, the costs of service of process, *and pro hac vice* admissions. *Id.* Courts regularly award litigation expenses in addition to attorneys' fees in class action cases. *See, e.g.*, *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012) ("It is well-established that Plaintiff who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award."). Class Counsel's request for expenses should be approved as fair and reasonable given that counsel has a strong incentive to keep costs and expenses at a reasonable level due to the high risk of no recovery when the fee is contingent.

**C. The Requested Service Award Should Be Approved**

Courts recognize the purpose and appropriateness of service awards to class representatives. *See, e.g.*, *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *6-7 (S.D.W. Va. May 23, 2013) (approving award of $7,500 per lead Plaintiff); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (approving a $10,000 service award); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 WL 4403524, at *16 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry*, 807 F.3d 600 (4th Cir. 2015) (approving a $5,000 service award). "A fairly typical practice, incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Manuel*, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (internal quotations omitted).

Service awards are "routinely approved" in class actions to "encourage socially beneficial litigation by compensating named plaintiff for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Kay Co.*, 749 F. Supp. 2d at 472; *Berry*, 807 F.3d at 613 (service awards compensate the class representative for work done on behalf of the class and make up for financial risk undertaken in bringing the action). Serving as a class representative "is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Id.* at 473; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiffs' request service awards of $2,500 each. This request is reasonable in light of the time and effort Plaintiffs devoted on behalf the Class. In this litigation, Plaintiffs put themselves forward in litigating this case, kept abreast of the case's status, participated in settlement negotiations, and discussed with counsel various aspects of the case. *See Burke v. Shapiro, Brown*

*& Alt, LLP*, No. 3:14-cv-201 (DJN), 2016 WL 2894914, at *6 (E.D. Va. May 17, 2016). The Class Representatives amply fulfilled their duties, making the service awards requested appropriate. Plaintiffs gathered documents and material in support of their claims that were used in drafting their separate complaints and Consolidated Class Action Complaint and were actively involved in the litigation that ultimately resolved this case. *See* Joint Decl. ¶ 44. Without the time and effort of Plaintiffs, the Settlement would not have been achieved.

Much larger service awards have been regularly approved by judges in this District and the Fourth Circuit. *See, e.g.*, *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (granting $25,000 service awards); *In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No. 115MD2627, 2020 WL 5757504, at *91 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000); *Brown v. Charles Schwab & Co., Inc.*, No. 2:07-cv-03852, 2011 WL 13199227, at *7 (D.S.C. July 26, 2011) (approving $10,000 service award to named plaintiff); *Manuel,* 2016 WL 1070819, at *17 n.3 (E.D. Va. Mar. 15, 2016) ("Various studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992.") (*citing* Newberg on Class Actions § 17.8 (5th ed.)). The requested service awards of $2,500 each are less than or equal to what has been approved in similar data privacy class action settlements. *See, e.g.*, *Lutz v. Electromed, Inc.*, No. 21-cv-02198, ECF No. 73 (D. Minn.) (service award of $9,900 in a data breach class action); *In re Capital One Consumer* Data *Security* Breach *Litig.*, 2022 WL 18107626, at *4 n.5 (service award of $5,000 to each plaintiff in a data privacy class action).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that this Court approve Class Counsel's request for a combined award of attorneys' fees and expenses of $250,000 and payment of a $2,500 service award to each Class Representative. For judicial efficiency,

Plaintiffs request that the Hearing for and the Order on this motion be consolidated with Plaintiffs' forthcoming motion for final approval of the class settlement, for which Class Counsel will provide a detailed proposed final order.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Lee A. Floyd*
Lee A. Floyd (VSB #88459)
**FLOYD LAW, PC**
626 East Broad Street, Ste. 300
Richmond, VA 23219
Telephone: (804) 529-0000
lee@floydpc.com

David K. Lietz (*pro hac vice*)
**MILBERG PLLC**
5335 Wisconsin Ave., NW, Ste. 440
Washington, DC 20015
Phone: 866.252.0878
dlietz@milberg.com

A. Brooke Murphy (*pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Ste. 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

*Class Counsel*

William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N Pennsylvania Ave
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd. Ste 200

Houston, Texas 77006
Phone: (888) 350-3931
lmontgomery@eksm.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's CM/ECF system, which will automatically notify all counsel of record.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Lee A. Floyd*

Lee A. Floyd (VSB #88459)
**FLOYD LAW, PC**
626 East Broad Street, Ste. 300
Richmond, VA 23219
Telephone: (804) 529-000
lee@floydpc.com